**FILED**

JUL 0 9 2007   NF,

JUL 09 2007

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| VINCENT RICHARDSON and JANICE MARTIN | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    **07CV 3825** |
| | )    **JUDGE BUCKLO** |
| CITY OF CHICAGO, and CHICAGO POLICE OFFICERS, K. DEEREN, Star 9721, M. MCMEEL, Star 12198, D. LOPEZ, Star 12685, and UNKNOWN CHICAGO POLICE OFFICERS | )    **MAGISTRATE JUDGE ASHMAN** <br> ) <br> ) <br> ) <br> ) |
| | )    JURY DEMANDED |
| Defendants. | ) |

## COMPLAINT

NOW COME the plaintiffs Vincent Richardson and Janice Martin, through their attorneys, Christopher R. Smith and Jared S. Kosoglad, A LAW OFFICE OF CHRISTOPHER R. SMITH, and complaining of the defendants CITY OF CHICAGO, and CHICAGO POLICE OFFICERS, K. Deeren, Star 9721, M. McMeel, Star 12198, D. Lopez, Star 12685, and Unknown Chicago Police Officers stating as follows:

**INTRODUCTION**

1.    This is a civil action seeking damages against defendants for committing acts under color of law, and depriving plaintiffs of rights secured by the Constitution and laws of the United States.

**JURISDICTION**

2.    This action is brought pursuant to 42 U.S.C. Sections 1983 and 1988, and the

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.  Jurisdiction is

founded upon 28 U.S.C. Sections 1331 and 1341(3) and (4) and 1343, and the aforementioned

Constitutional and statutory provisions.


**PARTIES**

3.    Plaintiffs are citizens of the United States, who was reside in Chicago, IL.

4.    All individual defendants are police officers employed by the City of Chicago.  All

are sued individually.

5.    Defendant City of Chicago (hereinafter "CITY") is a municipality duly incorporated

under the laws of the State of Illinois, and is and was the employer of the police personnel named

herein as agents of the CITY.

6.    At all times relevant hereto, defendant officers were acting under color of the

statutes, ordinances, regulations, customs and usages of the State of Illinois, the City of Chicago,

and the Chicago Police Department ("CPD"), and within the scope of their employment with

defendant CITY.


**FACTS: VINCENT RICHARDSON**

7.    On June 3, 2006, at or around 11:50 p.m., Vincent Richardson parked his truck

alongside the building where he lived with his girlfriend, Janice Martin.

8.    For years, Mr. Richardson dutifully maintained his monthly payment schedule on

his 2003 Dodge Dakota.

9.      Mr. Richardson left his truck, and was halfway up the back stairway to his second floor apartment, when he saw a police car pull up behind his truck.

10.      A small group of defendant police officers exited their vehicle, and shouted at Mr. Richardson to "Come back down." Another officer shouted up to Mr. Richardson, asking what he was doing at that address. After stating that he shared the second floor apartment with his girlfriend, Mr. Richardson complied with Defendants and descended the stairs.

11.      Mr. Richardson showed Defendants his identification, which listed his address as the location where he was parked. Mr. Richardson took out his cell phone and was about to call Janice Martin, when a defendant officer slapped the phone out of his hand. When the phone hit the ground, the battery was knocked out. At this time, well before Mr. Richardson was placed under arrest, defendant officers took plaintiff's gold necklace off of his neck.

12.      Without asking permission, and with no legal justification, Defendants seized Mr. Richardson, and began to search his person. Defendants searched Mr. Richardson's pockets, and confiscated his keys.

13.      Using Mr. Richardson's keys, without his permission, without a warrant, and without any other legal justification, Defendants began to search Mr. Richardson's truck.

14.      After another squad car arrived on the scene, Mr. Richardson's truck was searched for a second time. After a few minutes, another squad car arrived, and Mr. Richardson's truck was searched for a third and final time.

15.      In the meantime, Defendants had taken Mr. Richardson's house keys and were searching the building where he lived.

16.      Mr. Richardson heard Defendants discussing whether they should arrest Mr.

3

Richardson or Ms Martin. Mr. Richardson overheard a Defendant saying that he thought Mr.

Richardson had a prior felony. Mr. Richardson interjected that he did not. After hearing Mr.

Richardson, a defendant officer replied, "You do now. I'm going to make this very hard for you."

At this point, Mr. Richardson was handcuffed and placed under arrest.

17.     Mr. Richardson was placed in the backseat of a police squad car.

## FACTS: JANICE MARTIN

18.     In the late evening of June 3, 2006 plaintiff Janice Martin was sleeping soundly

when she was awakened by a loud crash at the front of her apartment. While the outer front door

of her apartment building was locked, the front door leading into Ms. Martin's apartment was off

of its hinges while her living space was being remodeled. Defendants pushed through this door

causing it to crash into a wall and clatter onto the ground.

19.     Defendants did not have permission to enter the apartment shared by Ms. Martin

and Mr. Richardson. Defendants had no warrant or other lawful justification for entering Ms.

Martin's apartment.

20.     Terrified that she was about to be burglarized or worse, Ms. Martin jumped out of

bed, and shouted "Who is there?"

21.     Already inside of Ms. Martin's apartment, Defendants responded "police."

22.     When Ms. Martin turned on the lights, a defendant officer began to interrogate her

about weapons and drugs supposedly found in the third floor apartment. Neither Mr. Richardson

nor Ms. Martin either rented or occupied the third floor apartment. Without Ms. Martin's

consent, other defendants searched Ms. Martin's apartment, rummaging through and making a

mess out of her most personal belongings.

23.     Never officially placed under arrest, Ms. Martin's hands were handcuffed behind her back. Ms. Martin was repeatedly told that someone "was going to go to jail tonight," and that she "was going to jail for all the shit that's upstairs."

24.     While Ms. Martin was handcuffed, posing no conceivable threat to anyone, an officer-defendant pointed a rifle at Ms. Martin's head. Ms. Martin asked the officer to please lower his weapon. In response, defendant officer smirked—indicating that he took sadistic pleasure in his threatening gesture. When Ms. Martin asked for her shoes, she was refused and told to sit down.

25.     After the officers finished searching her apartment, they decided not to arrest Ms. Martin, because they "could take Vincent Richardson instead."

26.     After the officers left her apartment, Ms. Martin looked out the back window and saw a police car driving off. Ms. Martin also saw another police officer get into Mr. Richardson's truck and drive away.

27.     Because of the malicious and illegal actions of defendants, this was the last time that either Ms. Martin or Mr. Richardson saw Mr. Richardson's truck. Despite the quantity of narcotics supposedly seized, drug charges against Mr. Richardson were quickly dropped. And even though a judge ordered the immediate release of his vehicle, Mr. Richardson's truck was sold at auction for a fraction of its resale value.

28.     Based on the malicious and illegal actions of defendants, Mr. Richardson waited needlessly in jail for several days while the money necessary for him to bond out was acquired.

29.     Mr. Richardson's jury acquittal on the remaining gun charge, involving a weapon

5

that was found in an apartment neither rented nor occupied by either plaintiff, is indicative of his complete innocence.

30.     Ms. Martin was never charged with any crime.

31.     As a direct and proximate result of the malicious actions of the defendant coconspirators, Mr. Richardson and Ms. Martin were injured, including but not limited to: the loss of their freedom, loss of property, reputation damage, humiliation, deprivation of constitutional rights, dignity, lost time, lost wages, attorney's fees, and extreme emotional distress.

## COUNT I

### Against Officers for Section 1983 Fourth Amendment Violations

1-31.     Paragraphs 1 through 31 above are realleged here as if fully set forth herein.

32.     The searches and seizures of the plaintiffs' persons and property as detailed above, performed willfully and wantonly by the defendants, individually and in conspiracy with each other, were in violation of plaintiffs' right to be free of unreasonable searches and seizures under the Fourth Amendment to the Constitution of the United States and 42 U.S.C. sec. 1983.

33.     As a proximate result of the aforementioned Fourth Amendment violations, plaintiffs were greatly injured, including the deprivation of their liberty and the taking of their property. In addition, the violations proximately caused the plaintiffs great mental anguish and humiliation, exposed them to public scandal and disgrace, caused loss of wages, and caused plaintiffs to incur various expenses, all to their damage.

WHEREFORE, plaintiff demands judgment against the individual officers, jointly and

severally, for compensatory damages in an amount in excess of FIVE HUNDRED THOUSAND

DOLLARS ($500,000) and further demand judgment against each of said defendants, jointly and

severally, for punitive damages in an amount in excess of ONE MILLION DOLLARS

($1,000,000), plus attorneys' fees pursuant to statute and the costs of this action and such other

relief as this Court deems just, proper, and equitable.


### COUNT II

#### Against Officers, 1983 Action for Due Process Violation

1-31.    Paragraphs 1 through 31 above are realleged as if fully set forth herein.

32.    The actions of defendant officers in falsely testifying about their arrest of Plaintiff

Richardson denied plaintiff a fair and impartial trial, violating his right to Due Process, as

guaranteed by the Fourteenth Amendment to the United States Constitution.

33.    As a direct and proximate result of the aforementioned Due Process violation,

plaintiff was greatly injured, including the loss of his liberty and his property as detailed above.

In addition, the violations proximately caused the plaintiff great mental anguish and humiliation,

exposed him to public scandal and disgrace, and caused him to incur various expenses, all to his

damage.

WHEREFORE, plaintiff demands judgment against the individual officers, jointly and

severally, for compensatory damages in an amount in excess of FIVE HUNDRED THOUSAND

DOLLARS ($500,000) and further demand judgment against each of said defendants, jointly and

severally, for punitive damages in an amount in excess of ONE MILLION DOLLARS

($1,000,000), plus attorneys' fees pursuant to statute and the costs of this action and such other relief as this Court deems just, proper, and equitable.

### 42 U.S.C. Section 1983 — Excessive Force

1-31.  Plaintiffs reallege paragraphs 1 through 31 above, as if fully set forth here.

32.  The actions of defendant officers, detailed above, constitute unreasonable, unjustifiable, and excessive force against plaintiffs, thus violating plaintiffs' rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C., Section 1983.

33.  As a proximate result of the above-detailed actions of defendants, plaintiffs were injured, including mental suffering, anguish, and humiliation.

WHEREFORE, plaintiff demands judgment against the individual officers, jointly and severally, for compensatory damages in an amount in excess of FIVE HUNDRED THOUSAND DOLLARS ($500,000) and further demand judgment against each of said defendants, jointly and severally, for punitive damages in an amount in excess of ONE MILLION DOLLARS ($1,000,000), plus attorneys' fees pursuant to statute and the costs of this action and such other relief as this Court deems just, proper, and equitable.

### COUNT IV

### 745 ILCS 10/9-102

1-31.  Plaintiffs reallege paragraphs 1 through 27 above, as if fully set forth here.

32.  Defendant City of Chicago is the employer of Defendants K. Deeren, M. McMeel, D. Lopez, and Unknown Chicago Police Officers.

33.    K. Deeren, M. McMeel, D. Lopez, and Unknown Chicago Police Officers committed the acts alleged above under color of law and in the scope of their employment as employees of the City of Chicago.

WHEREFORE, should K. Deeren, M. McMeel, D. Lopez, and Unknown Chicago Police Officers be found liable on one or more of the claims set forth above, Plaintiffs demand that, pursuant to 745 ILCS 10/9-102, the Defendant City of Chicago be found liable for any judgment plaintiffs obtain against said defendants, as well as attorneys fees and costs awarded.

Respectfully submitted,

THE PLAINTIFF

By: _____
One of his attorneys

PLAINTIFF DEMANDS TRIAL BY JURY.

Christopher R. Smith
Jared S. Kosoglad
A LAW OFFICE OF CHRISTOPHER R. SMITH
119 North Peoria, Suite 3A
Chicago, Illinois 60607
312-432-0400